IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–00735–EWN–KMT

ISMAEL MONTANO,
LIONEL PALACIO,
ADDISON KEATON,
EUGENE BAILEY,
PHIL DEHERRERA,
CLARENCE WORTHEN, on their own behalf and on behalf of all
others similarly situated,

      Plaintiffs,

v.

ELAINE L. CHAO, in her official capacity as Secretary of the
United States Department of Labor,
SHELBY HALLMARK, in his official capacity as Director of the
Office of Workman's Compensation Programs of the United States
Department of Labor, and
PETER M. TURCIC, in his official capacity as Director of the
Division of Energy Employees Occupational Illness Compensation
Program, of the United States Department of Labor,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

This case involves the review of administrative agency action. Plaintiffs, individuals

who receive or received benefits under the Energy Employees Occupational Illness

Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. § 7384 *et seq.* (2006), complain

that Defendants, officials with the United States Department of Labor, acted unlawfully in the

administration of the EEOICPA.  This matter is before the court on Defendants' "Motion for Reconsideration of Order Denying Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative for a Written Opinion," filed February 8, 2008.  Although disputed, jurisdiction and review of this case are premised upon 28 U.S.C. §§ 1331 and 1361 in conjunction with 5 U.S.C. § 702.

## FACTS

### 1. *Factual Background*

During the days of the Cold War, many Americans worked in the facilities of this country's nuclear weapons complex.  Although they did not necessarily know it then, several were exposed to unhealthy doses of dangerous materials in the course of their employment.  *See* 42 U.S.C. §§ 7384(a)(2), (a)(5)–(6) (2006).  As a result of exposure to radiation or other toxic materials at facilities run by the federal government or by federal contractors and subcontractors, a large number of these employees contracted cancers and non-malignant diseases.  *Id.* §§ 7384(a)(3), (a)(5).

In 2000, Congress enacted, and then-President Bill Clinton signed into law, the Energy Employees Occupational Illness Compensation Program Act.  Pub. L. No. 106-398, 114 Stat. 1654, 1654A-494 (codified at 42 U.S.C. § 7384 *et seq.* [2006]).  The EEOICPA was intended "to provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors."  42 U.S.C. § 7384d (2006).

The President, under authority granted by the EEOICPA, *id.* § 7384d(a), designated the Department of Labor as the administrating agency of the program. *See* Exec. Order No. 13,179, 65 Fed. Reg. 77487 (Dec. 7, 2000). The Department of Labor then allegedly sub-delegated administration to an entity within its control. (*See* Class Action Compl. for Declaratory and Injunctive Relief ¶¶ 27–28 [filed Apr. 11, 2007] [hereinafter "Compl."]; Mot. to Dismiss for Lack of Subj. Matter Jurisd. and Incorporated Mem. in Supp. Thereof at 3 [filed Aug. 15, 2007] [hereinafter "Mot. to Dismiss"].)

Plaintiffs are all beneficiaries under the EEOICPA. (*See* Compl. at 2; Mot. for Recons. of Order Denying Defs.' Mot. to Dismiss for Lack of Subj. Matter Jurisd., or in the Alt. for a Written Op. at 3 [filed Feb. 8, 2008] [hereinafter "Mot. for Recons."].) Their complaint alleges that Defendants, starting in mid-2006, began administering the EEOICPA in a way that resulted in harm to Plaintiffs. (Compl. ¶ 38.) For example, Plaintiffs claim that Defendants: "have engaged in a deliberate program to delay authorization" of services; "have instructed home health agencies" to utilize economically unsustainable procedures; "have engaged in a deliberate program to unreasonably delay payment for authorized" services; "have engaged in a deliberate program to 'down code' the skill level of prescribed nursing services and to override the orders of the [P]laintiffs' doctors based upon a 'paper review' by lay Department of Labor employees, without medical justification, solely for purposes of cost containment;" have "place[d] both the plaintiffs and their nursing service providers in a legal/economic quandary and jeopardy . . . ;" "have artificially created legal, economic and medical uncertainties that have jeopardized and continue to jeopardize the health and emotional well-being of the [P]laintiffs and threaten the

availability of nursing services to them." (*Id.* ¶¶ 39–44.) According to Plaintiffs, these policies

and practices were implemented in violation of the Administrative Procedure Act ("APA") and

contrary to Congress's intent in the EEOICPA. (*Id.* ¶ 45.) They claim further that the

"processes and procedures for reviewing and authorizing levels of home care utterly fails [sic] to

account for or protect the [P]laintiffs against the vagaries of sudden changes in necessary staffing

needs occasioned by rapid unanticipated changes in their medical conditions." (*Id.* ¶ 48.) Also,

> [b]y denying, delaying and limiting doctor prescribed skilled nursing care to
> disabled and enfeebled former nuclear energy workers such as [P]laintiffs who are
> qualified to receive them under the EEOICPA, without an objective basis and any
> countervailing medical assessment in situ, and in applying the "cost
> effectiveness" grid of its regulations and unwritten policies in an arbitrary
> fashion, [Defendants] have violated and continue to violate the terms of the
> EEOICPA and its implementing regulations.

(*Id.* ¶¶ 69–70.) Plaintiffs argue that by taking this action, "Defendants have acted and are

threatening to act to deprive [them] of their rights under the laws of the United States." (*Id.* ¶

70.) Plaintiffs also assert that:

> Defendants have acted in excess of their statutory and constitutional authority, and
> have threatened and will, unless restrained by this court, continue to deprive
> [Plaintiffs] of essential nursing services ordered by doctors though a process of
> unreasonable delay in authorization and bureaucratic "down-coding" of payment
> for services, in contravention of doctors' orders and state law requirements that
> nursing personnel conform to the level and intensity of services consistent with
> professional assessment of patient need and doctors' orders.

(*Id.*)

   In connection with these allegations, Plaintiffs seek a declaration from this court that

Defendants have violated the EEOICPA and its implementing regulations. (*Id.* ¶ 74[a].)

Plaintiffs ask the court to preliminarily and permanently enjoin Defendants "from delaying or

withholding payment for services ordered by a treating doctor for qualified EEOICPA recipients, without medical documentation that the ordered services are not 'likely to cure, give relief, or reduce the degree or period of that illness.'"  (*Id.* ¶ 74[b].)  Plaintiffs also seek a declaration that Defendants have applied their EEOICPA regulations arbitrarily in contravention of the Due Process Clause of the Fifth Amendment.  (*Id.* ¶¶ 76–78, 80[a].)  They request the court preliminarily and permanently enjoin Defendants "from violating [Plaintiffs'] Fifth Amendment rights by delaying authorization for, underpaying for, or withholding payment for services ordered by a treating doctor for qualified EEOICPA recipients, without medical documentation that the ordered services are not 'likely to cure, give relief, or reduce the degree or period of that illness.'"  (*Id.* ¶ 80[b]; *see also* Scheduling Order at 3 [filed Aug. 31, 2007] [describing Plaintiffs' relief sought].)

## 2.    *Procedural History*

On April 11, 2007, Plaintiffs filed a class action complaint seeking declaratory and injunctive relief against Defendants.  (*See* Compl.)[1]  On August 15, 2007, Defendants filed a motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(1), arguing that this court lacked subject matter jurisdiction over the matter.  (*See* Mot. to Dismiss at 1.)  This motion argued two grounds for dismissal.  First, Defendants argued that their subsequent remedial measures had rendered the case moot.  (*See id.* at 10–16.)  Second, Defendants argued that the matter was not properly before this court because Plaintiffs challenged no specific final agency

_____

[1] A motion to certify the class remains pending.  (*See* Pls.' Mot. in Supp. of Class Certification [filed Sept. 2, 2008].)

action.  (*See id.* at 17–20.)  According to Defendants, this purported defect forced the action outside of the purview of the APA.  Since the claims were not covered by another waiver of sovereign immunity and no other cause of action existed, Defendants argued that judicial review was precluded.  (*See id.* at 17–18.)

 Plaintiffs sought an extension of time to file their response to Defendants' motion to dismiss so that they could conduct limited discovery on the mootness issue.  (*See* Unopp. Mot. for Extension of Time to Respond to Defs.' Mot. to Dismiss [filed Aug. 31, 2007].)  Magistrate Judge Michael E. Hegarty agreed to limited discovery, and I granted Plaintiffs the first of several extensions to file their response.  (*See* Scheduling Order at 4, 8 [filed Aug. 31, 2007]; Minute Order [filed Sept. 4, 2007].)  Defendants then filed a motion to stay this limited discovery.  (*See* Defs.' Mot. to Stay Disc. Pending Resolution of Defs.' Mot. to Dismiss for Lack of Subj. Matter Jurisd. [filed Sept. 5, 2007].)  Magistrate Judge Hegarty denied this motion, and I granted Plaintiffs a second extension to file their response to Defendants' motion to dismiss.  (*See* Order on Mot. to Stay Disc. Pending Resolution of Defs.' Mot. to Dismiss for Lack of Subj. Matter Jurisd. [filed Sept. 19, 2007]; Minute Order [filed Sept. 24, 2007].)

After discovery stalled, I granted a third request to extend the deadline for Plaintiffs' response, this time ordering that a final briefing schedule be submitted within ten days.  (*See* Minute Order Granting Mot. for Extension of Time to File Response to Mot. to Dismiss [filed Dec. 5, 2007].)  On January 8, 2007, nearly five months after Defendants filed their motion to dismiss, the parties submitted a proposed schedule calling for briefing of that motion to be completed by April 22, 2008.  (*See* Joint Mot. for New Deadlines for Briefing Defs.' Mot. to

Dismiss [filed Jan. 8, 2008].)  On January 16, 2008, I adopted this proposed schedule.  (*See* Minute Order [filed Jan. 16, 2008].)

On January 25, 2008, I held a status conference in this case.  The conference focused mainly on the delay in resolving the motion to dismiss.  Defendants stated that the "point" of their motion was that Plaintiffs' claims were moot as an historical matter that had been remedied and was unlikely to recur, thereby divesting this court of Article III jurisdiction.  (*See* 1/25/08 Tr. at 5.)  I disagreed, finding that the claims were capable of repetition, yet evading review and therefore denied the motion to dismiss.  (*See id.*; *see also* Minute Entry [filed Jan. 25, 2008].)  Because the arguments during the status conference focused on the mootness question, Defendants did not raise their finality concern, and I did not issue a separate order addressing the finality issue.

On February 8, 2008, Defendants filed a motion for reconsideration of my January 25, 2008, order.  (*See* Mot. for Recons.)  Since Defendants' motion to dismiss was never fully briefed, they ask that I reinstate the motion and order briefing be completed.  (*See id.* at 16.)  Defendants request, in the alternative, that I provide a written order explaining my denial of their motion to dismiss.  (*See id.*)

In addition to the reasoning they presented in their original motion to dismiss, Defendants also raise new arguments in support of their motion for reconsideration.  They now claim that Plaintiffs lacked standing in this case from the outset because, contrary to Defendants' earlier belief, none of the Plaintiffs experienced any gap or decrease in the services rendered to them by

third party providers. (*See id.* at 2.) According to Defendants this prevents Plaintiffs from alleging a cognizable injury-in-fact. (*See id.*)

Defendants also claim that they have become aware of new mootness concerns since first filing their motion to dismiss. (*See id.*) Defendants argue that the death of two of the Plaintiffs, Ismael Montano and Eugene Bailey, in the intervening time warrants dismissal of these plaintiffs from the case.[2] (*See id.* at 13–14 [citing Notice of Suggestion of Death (filed Jan. 11, 2008)].)

On March 3, 2008, Plaintiffs responded to the motion for reconsideration and asserted a request for sanctions against Defendants' counsel for unreasonably and vexatiously multiplying these proceedings. (*See* Pls.' Objection to Mot. for Recons. and Request for Sanctions at 2 [filed Mar. 3, 2008] [citing 28 U.S.C. § 1927 (2006)] [hereinafter "Pls.' Resp."].) On March 7, 2008, Defendants replied. (*See* Defs.' Reply Mem. in Supp. of Mot. for Recons. of Order Denying Defs.' Mot. to Dismiss [filed Mar. 7, 2008] [hereinafter "Defs.' Reply"].) This matter is fully briefed and ripe for review.

## ANALYSIS

### 1.    *Duty To Confer*

I first address the issue of Defendants' compliance with the procedural rules of this court. All parties that come before the court are deemed to be on notice of its procedural rules. *See M.M. v. Zavaras*, 939 F. Supp. 799, 800 (D. Colo. 1996). One such rule, District of Colorado Local Civil Rule 7.1A, provides:

_____

[2] A third plaintiff, Addison Keaton, reportedly died after the motion for reconsideration was fully briefed. (*See* Notice of Suggestion of Death [filed June 10, 2008].)

> [t]he court will not consider any motion, other than a motion under [Federal Rule of Civil Procedure] 12 or 56, unless counsel for the moving party[,] . . . before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel . . . to resolve the disputed matter. The moving party shall state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule.

D.C.Colo.L.Civ.R. 7.1A (2006). This rule is mandatory, not permissive or advisory.

Defendants admit that they failed to confer with opposing counsel prior to filing the present motion for reconsideration and thus violated Local Rule 7.1A. (*See* Defs.' Reply at 1–2.) This court has held that this rule applies to motions to reconsider, including motions to reconsider dispositive motions. *See, e.g.*, *Supreme Auto Transp. v. Athena Assurance Co.*, No. 04–CV–02323–EWN–PAC, 2006 WL 1149148, at *1 (D. Colo. Apr. 28, 2006) (unpublished) (motion to reconsider granting of summary judgment); *see also Zavaras*, 939 F. Supp. at 800 (denying reconsideration of motion for leave to proceed under a pseudonym).

"The purpose of Rule 7.1A is to require the parties to confer and to attempt to resolve a dispute before incurring the expense of filing a motion and before requiring the court to address a disputed issue." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003). Failure to comply with Local Rule 7.1A is, in and of itself, sufficient grounds to warrant denial of a party's motion. *See Supreme Auto Transp.*, 2006 WL 1149148, at *2; *Echostar Commc'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998); *McCoy v. West*, 965 F. Supp. 34, 35 (D. Colo. 1997). However, a court rarely relies solely on Local Rule 7.1A to deny a motion. *See, e.g.*, *Supreme Auto Transp.*, 2006 WL 1149148, at *2; *Echostar Commc'ns Corp.*, 180 F.R.D. at 394–97; *McCoy*, 965 F. Supp. at 35–36; *Zavaras*, 939 F. Supp. at 800–02.

It appears from the briefing that Defendants' failure to comply with Rule 7.1 resulted from mistake rather than bad faith. (*See* Defs.' Reply at 2.) The court appreciates defense counsel's candor in admitting the mistake and accepting responsibility for it. (*See id.*) Nonetheless, in order to keep this court's rules from becoming a nullity or another opportunity for contention — which would directly contravene the efficiency goals of Rule 7.1A — I cannot simply ignore Defendants' failure to comply. However, as with many cases that have come before, I need not rely solely on Rule 7.1A for my ruling today. Accordingly, I deny Defendants' motion for reconsideration both due to their failure to adhere to the strictures of Rule 7.1A, and for the substantive reasons explained below.

### 2.    *Motions for Reconsideration*

The Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration. *See Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995). Nevertheless, such motions are generally accepted and construed under Federal Rules of Civil Procedure 59(e) and 60(b). *See id.*; *Hannah v. Roadway Express, Inc.*, 200 F.R.D. 651, 653–54 (D. Colo. 2001). Rule 59(e) applies only to final judgments and as such is not relevant to the order denying Defendants' motion to dismiss in this case. *See* Fed. R. Civ. P. 59(e) (2008). Under Rule 60(b), on the other hand:

> On motion and just terms, the court may relieve a party or its legal representative from a *final judgment, order, or proceeding* for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is

> void; (5) the judgment has been satisfied, released or discharged . . . ; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b) (2008) (emphasis added).

Defendants seek relief from my January 25, 2008, order which denied their motion to dismiss. They argue that reinstatement of the motion is appropriate under Rules 60(b)(2) and 60(b)(6). (*See* Mot. for Recons. at 1–2, 5.) Plaintiffs argue that Rule 60(b) is inapposite because my order was interlocutory and not "final" as the rule requires. (*See* Pls.' Resp. at 2–3.) It is true that Rule 60(b) encompasses only final orders, not interlocutory ones. *See Houston Fearless Corp. v. Tetter*, 313 F.2d 91, 92 (10th Cir. 1962); *see also Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, No. CIV–05–445–C, 2006 WL 2850482, at *1 (W.D. Okla. Sept. 29, 2006) (unpublished) (outlining legislative history of Rule 60[b]); *Nat'l Bus. Brokers v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255–56 (D. Colo. 2000). However, the Tenth Circuit has noted that there is nothing which "limits the plenary power of a federal district court which has made an interlocutory order to grant such relief from that order as justice requires while the case is pending before it." *Houston Fearless Corp.*, 313 F.2d at 92; *see also Nat'l Bus. Brokers, Ltd.*, 115 F. Supp. 2d at 1256. Therefore, I read *Houston Fearless* as allowing me to entertain motions seeking relief from an interlocutory orders where justice requires.

Since the inquiry surrounding reconsideration of interlocutory orders is unbounded by any mandatory analytical framework, courts generally have borrowed the analytical framework from Rule 60(b). *See, e.g.*, *Supreme Auto Transp.*, 2006 WL 1149148, at *2–4; *Hannah v. Roadway Express, Inc.*, 200 F.R.D. 651, 653–54 (D. Colo. 2001); *Bartholic v. Scripto-Tokai Corp.*, 140 F.

Supp. 2d 1098, 1124 (D. Colo. 2000).  A court's review of a motion for reconsideration of an interlocutory order is largely discretionary.  *See Nat'l Bus. Brokers, Ltd.*, 115 F. Supp. 2d at 1256. Because the Rule 60(b) analysis shares a need to balance the goal of arriving at the correct answer with judicial efficiency, the interests of opposing parties, and respect for the normal channels of judicial administration, I follow suit and use that framework for my analysis here.

Relief under Rule 60(b) is generally viewed as "'extraordinary and may only be granted in exceptional circumstances.'"  *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) (quoting *Cashner v. Freedom Stores*, 98 F.3d 572, 576 [10th Cir. 1996].)  Such relief is rarely afforded for fear that it would undermine the doctrine of res judicata and the ordinary appeals process.  *See United States v. Beggerly*, 524 U.S. 38, 46 (1998); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000).  "[A] motion to reconsider would be appropriate where, for example, the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *United States v. Ibarra*, 920 F.2d 702, 706 n.3 (10th Cir. 1990), *vacated on other grounds*, 502 U.S. 1 (1991).  However, a motion for reconsideration does not allow a party to rehash facts and arguments already addressed or available, yet neglected, in a previous decision.  *See Servants of Paraclete*, 204 F.3d at 1012.

### a. Relief Based on Newly Discovered Evidence

Ordinarily, in order to reopen a judgment under Rule 60(b)(2) based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a

new trial under Rule 59(b)," Fed. R. Civ. P. 60(b)(2) (2008), the Tenth Circuit requires a party to

show:

(1) the evidence was newly discovered since the trial;
(2) [the party] was diligent in discovering the new evidence;
(3) the newly discovered evidence could not be merely cumulative or impeaching;
(4) the newly discovered evidence had to be material; and
(5) that a new trial, with the newly discovered evidence would probably produce a different result.

*Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 727 (10th Cir. 1993) (citing *Graham v. Wyeth

Labs.*, 906 F.2d 1399, 1416 [10th Cir. 1990]).

Defendants offer no new evidence regarding the finality issue or my conclusion regarding

mootness due to their alleged subsequent remedial measures. (*See* 1/25/08 Tr. at 5.) Therefore, I

find that relief from my January 25, 2008, order on the basis of new evidence is inappropriate.

Nonetheless, Defendants make two arguments based on "newly discovered evidence" that

did not appear in their original motion to dismiss. They claim Plaintiffs have admitted through

discovery that at all times in question they received their desired level of care from third party

providers despite Defendants' withholding of authorization for such care. (*See* Mot. for Recons.

at 9–13.) Defendants also argue that the case is moot as to some of the named plaintiffs because

they have apparently died since Defendants filed their original motion to dismiss. (*See id.* at

13–14.) Defendants claim that this new evidence militates in favor of relief from this court's

order denying their motion to dismiss. (Mot. for Recons. at 1–2.)

I conclude however, whatever the probative effect of this new evidence, it cannot justify

reconsideration of my original oral ruling under Rule 60(b)(2). Simply put, this "newly

discovered evidence" does not support any arguments advanced in the original motion. In addition, the five-step *Graham* analysis for newly discovered evidence is not compatible with newly conceived subject matter jurisdiction arguments. Specifically, the first three steps conflict with the mandate that this court must dismiss a case any time it discovers jurisdiction over the subject matter to be lacking. *See* Fed. R. Civ. P. 12(h)(3) (2008); *Thompson v. United States*, 291 F.2d 67, 68 (10th Cir. 1961). Therefore, inquiries regarding when the evidence was discovered, the level of diligence the party employed, and whether the evidence is merely cumulative or impeaching do not comport with this court's duty to address subject matter jurisdiction issues as they arise. As a result, I find that Defendants' new standing and mootness arguments are more properly analyzed under the catch-all provision in Rule 60(b)(6), the analysis to which I turn next.

### b. Relief Based on Other Reasons That Justify Relief

Rule 60(b)(6) allows reversal of "a final judgment, order, or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6) (2008). Sometimes referred to as a "catch-all provision," Rule 60(b)(6) embraces a court's broad equitable powers. *See Bartholic*, 140 F. Supp. 2d at 1124; *see also Cashner*, 98 F.3d at 579 (describing Rule 60[b][6] as a "grand reservoir of equitable power to do justice in a particular case"). However, to avoid the potential problems resulting from Rule 60(b)(6)'s breadth, the Tenth Circuit has counseled that "a court may grant a Rule 60(b)(6) motion only in *extraordinary circumstances* and only when necessary to accomplish justice." *Cashner*, 98 F.3d at 579 (emphasis added).

As a preliminary matter to my analysis of the court's subject matter jurisdiction, Defendants claim that questions about subject matter jurisdiction must temper the otherwise restrictive rules governing my reconsideration of their motion. (*See* Mot. for Recons. at 6.) Specifically, Defendants argue and I agree, that if a court determines that it lacks subject matter jurisdiction over a claim at any time, the court must dismiss the claim. (*See id.*); Fed. R. Civ. P. 12(h)(3) (2008); *Thompson*, 291 F.2d at 68 ("It is elementary that the court's first duty is to determine its jurisdiction to entertain and decide a case on its merits. It must make this determination regardless of the impropriety of [the] motion."). With this consideration in mind, I proceed to the analysis in this matter.

## I.     *Standing*

Defendants claim that during the time they refused to fully pay for Plaintiffs' medical expenses, third-party provider Professional Case Management, Inc., continued to provide full services without interruption. (*See* Mot. for Recons. at 10–11; *see also* Pls.' Resp. at 4–5 [acknowledging that service to Plaintiffs was not interrupted].) Defendants argue that this continued provision of services strips Plaintiffs of their Article III standing because it undermines their assertions of an injury-in-fact. (*See* Mot. for Recons. at 9, 11.)

For Article III standing to exist, a plaintiff must properly plead three elements: injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007). "Injury-in-fact" is described as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. at 560

(citations and internal quotation marks omitted).  "Causation" requires that there "be a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Id.* (citation and internal quotation marks omitted) (alterations and omissions in original).  Finally, "redressability," mandates that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 561 (citation and internal quotation marks omitted).

In their complaint, Plaintiffs allege that "Defendants *have acted and are threatening to act to deprive [them] of their rights* under the laws of the United States.  Plaintiffs are suffering and will continue to suffer a real and immediate threat of irreparable injury as a result of the policies and practices of [D]efendants."  (Compl. ¶ 72 [emphasis added].)  They also allege that

> Defendants have acted in excess of their statutory and constitutional authority, and *have threatened and will, unless restrained by this court, continue to deprive [Plaintiffs] of essential nursing services* ordered by doctors though a process of unreasonable delay in authorization and bureaucratic "down-coding" of payment for services, in contravention of doctors' orders and state law requirements that nursing personnel conform to the level and intensity of services consistent with professional assessment of patient need and doctors' orders.

(*Id.* ¶ 73 [emphasis added].)  According to Plaintiffs, "[t]hese actions by [Defendants] have artificially created legal, economic and medical uncertainties that have *jeopardized and continue to jeopardize the health and emotional wellbeing* [sic] of the [P]laintiffs and *threaten the availability of nursing services to them*."  (*Id.* ¶ 44 [emphasis added].)  Finally, Plaintiffs assert:

> [t]he deliberate delays, limitations and prescription overrides implemented by [Defendants] *immediately threaten the health, well-being and personal security of [Plaintiffs] and members of the class* who are disabled, enfeebled and unable to

defer the skilled nursing needs prescribed by their individual doctors, so as to render [Defendants'] "adjudicating" proceedings inadequate, and the resultant administrative delays will cause *irreparable harm* to [Plaintiffs].

(*Id.* ¶ 47 [first emphasis added].)

Defendants contend that, in the absence of an actual deprivation of services, Plaintiffs' claims assert what amounts to "psychological injury of apprehension" which is "insufficient to confer Article III standing." (Mot. for Recons. at 11); *see Finstuen*, 496 F.3d at 1144 ("[A] plaintiff cannot maintain standing by asserting an injury based merely on 'subjective apprehensions' that the defendant might act unlawfully." [citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983)]). In response, Plaintiffs argue that, regardless of the third-party provider's continued provision of the needed services, the immediate prospect of having their care denied or being forced to pay sizeable medical bills represents sufficient harm to support standing. (*See* Pls.' Resp. 10–12.) Defendants rejoin that Plaintiffs' alleged harms are too speculative or conjectural to support standing. ("[E]motional consequences . . . simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id.* (quoting *Lyons*, 461 U.S. at 107 n.8) (omission in original).

I disagree with Defendants. At this stage of the case, Plaintiffs need only assert "general factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defenders of Wildlife*, 504 U.S. at 561. Plaintiffs' allegations recount Defendants' acts and threats, not just emotional consequences, that put their desperately-needed medical care in jeopardy and promise to continue to do so unless relief is granted. This suffices as the concrete, particularized, and imminent injury required at this stage of the litigation. *See id.* With injury-in-fact demonstrated,

causation and redressability are uncontroversial. The complaint demonstrates that, to the extent that this injury exists, Defendants caused it. Furthermore, the declaratory and injunctive relief sought by Plaintiffs would redress the injury by preventing Defendants from perpetuating it into the future. Therefore, any evidence showing that Plaintiffs continued to receive their desired level of service, even when Defendants refused to pay for it, does not eliminate Plaintiffs' standing in this case. Therefore, this evidence fails to qualify as that which justifies relief from my order denying Defendants' original motion to dismiss.

### ii. Mootness Due to Purported Deaths of Named Plaintiffs

In their motion for reconsideration, Defendants alert the court to the fact that two of the Plaintiffs apparently have died since the original motion to dismiss was filed. (*See* Mot. for Recons. at 13–14 [citing Notice of Suggestion of Death (filed Jan. 11, 2008)].) Whatever the implications of this evidence, I find that the effect of these plaintiffs' deaths must be adjudicated at a different stage of this case. Although Defendants claim that substitution of these parties under Federal Rule of Civil Procedure 25 is not possible, it is not entirely clear from the record what impact the deaths of these plaintiffs have on the case. (*See* Mot. for Recons. at 14 n.7.) Specifically, the EEOICPA allows for the provision of "timely, uniform, and adequate compensation of covered employees and, where applicable, *survivors* of such employees . . . ." 42 U.S.C. § 7384d (2006) (emphasis added). Whether this provision is applicable to the current case is unclear and has not been adequately briefed. Moreover, there is a pending motion for class certification which may addresses this issue, and if appropriate, Defendants may raise this issue in future stages of this litigation. (*See* Pls.' Mot. in Supp. of Class Certification [filed Sept.

-18-

2, 2008]); *State Farm Mut. Ins. Co. v. Dyer*, 19 F.3d 514, 517–18 (10th Cir. 1994); *Thompson*, 291 F.2d at 68.  Therefore, because the record before me is inadequate in assessing the effect of any particular plaintiff's death and because I find a motion for reconsideration is an inappropriate vehicle for raising this issue for the first time, I find that Defendants' assertions regarding the deaths of certain named plaintiffs do not justify relief from my order denying Defendants' motion to dismiss.

### iii.    Finality

In their motion for reconsideration, Defendants ask me to reinstate their motion to dismiss, or in the alternative, to explain the reasoning behind my denial of that motion.  (*See* Mot. for Recons. at 16.)  As discussed above, Defendants' contentions do not justify reinstatement of the motion to dismiss.  Ordinarily, a court need not elaborate on the reasoning of an underlying order merely because a party brings a motion for reconsideration.  *Cf. Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (acknowledging that a motion to reconsider is analytically distinct from the underlying motion).  However, the unique circumstances surrounding my disposition of Defendants' motion to dismiss in this case resulted in an order that did not recount my reasoning regarding its alternative ground.  In the interest of fairness, and for the benefit of the record, I now offer a more detailed account of the rationale behind my order denying Defendants' motion to dismiss.  *Cf. Nat'l Bus. Brokers v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250 (D. Colo. 2000) (using motion for reconsideration to provide more detailed explanation of oral order dismissing party's claims).

As an alternative ground for their original motion to dismiss, Defendants asserted that this court lacked subject matter jurisdiction over this case because Plaintiffs failed to identify a specific final agency action. (Mot. to Dismiss at 17–20.) Because the EEOICPA does not provide a private right of action, Plaintiffs bring their claims under the APA. (*See* Compl. ¶ 1); *cf. Utah Envtl. Cong. v. Bosworth*, 443 F.3d 732, 739 (10th Cir. 2006). Defendants argue that the alleged absence of a challenged final agency action means that the APA's waiver of sovereign immunity and cause of action do not apply, and therefore, review of Plaintiffs' claims is prohibited. (*See* Mot. to Dismiss at 17–20.)

### *(1) Rule 12(b)(1) Motions to Dismiss*

Defendants' original motion to dismiss was based on Federal Rule of Civil Procedure 12(b)(1) which provides that a defendant may seek dismissal of a claim for a "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1) (2008); (*see* Mot. to Dismiss at 1.) When a defendant challenges subject matter jurisdiction, the plaintiff must establish such jurisdiction by a preponderance of the evidence. *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1272 (10th Cir. 2003).

The Tenth Circuit has explained that motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. "First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. . . . Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *United States*

*v. Rodriguez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citation and internal quotation marks omitted).

In addressing a facial challenge, the court must accept as true "all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (quoting *Mitchell v. King*, 537 F.2d 385, 386 [10th Cir. 1976]).  Furthermore, an elevated level of specificity in pleading is not required.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" [quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)] [alteration in original]).

Defendants' finality argument repeatedly referenced Plaintiffs' complaint without offering extraneous evidence.  (*See* Mot. to Dismiss at 17–20.)  As a result, I analyze Defendants' second ground for dismissal, their finality argument, as a facial challenge to this court's subject matter jurisdiction, and accept Plaintiffs' well-pleaded facts surrounding the issue as true.

### (2)    *Final Agency Action*

The APA provides "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  The Supreme Court bifurcated this analysis into a finality question based on the phrase "agency action" and a prudential standing question regarding who is a "person suffering legal wrong . . . or adversely affected or aggrieved." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83 (1990).  Defendants do not challenge

Plaintiffs' standing under section 702, and Plaintiffs easily meet the requirement that they fall into

the "zone of interest protected by the [EEOICPA]," and thus their standing under the APA is

settled.  *See id.* at 883; *City of Albuquerque v. United States Dep't of the Interior*, 379 F.3d 901,

915 (10th Cir. 2004) ("[T]he Administrative Procedure Act . . . clearly allows standing for those

plaintiffs within the 'zone of interests' protected by the statute, executive order, or regulation

which the agency is alleged to have violated . . . ." [citation and internal quotation marks

omitted]).

　　　Defendants' argument, therefore, focuses on the finality issue under section 702.  (*See*

Mot. to Dismiss at 18–20.)  According to the Supreme Court, "agency action" in this context

includes only "the whole or a part of an agency rule, order, license, sanction, relief, or the

equivalent or denial thereof, or failure to act."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 882

(quoting 5 U.S.C. § 551[13]).  As the APA elaborates:

> "relief" includes the whole or a part of an agency —
>
> (A)　　grant of money, assistance, license, authority, exemption,
> exception, privilege, or remedy;
> (B)　　recognition of a claim, right, immunity, privilege, exemption, or
> exception; or
> (C)　　taking of other action on the application or petition of, and
> beneficial to, a person.

5 U.S.C. § 551(11) (2006).

　　　Plaintiffs allege that "[D]efendants' processes and procedures for *reviewing and*

*authorizing levels of home nursing care* utterly fails to account for or protect [Plaintiffs] against

the vagaries of sudden changes in necessary staffing needs occasioned by rapid and unanticipated

changes in their medical conditions."  (Compl. ¶ 48 [emphasis added].)  Furthermore, they assert

that:

> "*[b]y denying, delaying and limiting doctor prescribed skilled nursing care* to
> disabled and enfeebled former nuclear energy workers such as [P]laintiffs who are
> qualified to receive them under the EEOICPA, without an objective basis and any
> countervailing medical assessment in situ, and *in applying the "cost effectiveness"
> grid of its regulations and unwritten policies* in an arbitrary fashion, [Defendants]
> have violated and continue to violate the terms of the EEOICPA and its
> implementing regulations."

(*Id.* ¶ 69 [emphasis added].)  Also according to Plaintiffs, Defendants and their agents within the

Department of Labor instructed care providers as to levels of care and under-authorized the

amount of care for individual Plaintiffs.  (*See id.* ¶¶ 40, 51, 54, 57, 60, 63, 66.)  This was all

purportedly based on internal policies, programs, or processes intended to cut costs at the expense

of the EEOICPA's intended beneficiaries.  (*See id.* at 2, ¶¶ 39–49, 73.)  I find that through such

allegations, Plaintiffs sufficiently challenge "relief . . . or denial thereof" by Defendants, as

defined under subsection 551(11) of the APA and thus challenge an agency action.

The APA's general review provisions, which apply in the present case, also require that

the challenged "agency action" be "final agency action."  *See Lujan v. Nat'l Wildlife Fed'n*, 497

U.S. at 882 ("Agency action made reviewable by statute and *final* agency action for which there is

no other adequate remedy in a court are subject to judicial review." [quoting 5 U.S.C. § 704]).

For a particular agency action to be final, it must meet two requirements.  First, it must "mark the

consummation of the agency's decisionmaking process — it must not be of a merely tentative or

interlocutory nature." *Ctr. for Native Ecosystems v. Cables*, 509 F.3d 1310, 1329 (10th Cir. 2007)

(citing *Bennett v. Spear*, 520 U.S. 154, 177–78 [1997]).  "Second, the action must be one by

which rights or obligations have been determined, or from which legal consequences will flow." *Id.*

I find that the agency action in the present case was "final." First, Plaintiffs complain of a consummation of the Defendants' decisionmaking process rather then a merely tentative or interlocutory measure. *See Ctr. for Native Ecosystems v. Cables*, 509 F.3d at 1329. Specifically, Plaintiffs allege that Defendants' "*policy and practice changes* were made without compliance with the [APA] and are contrary to the letter and spirit of the EEOICPA." (Compl. ¶ 45 [emphasis added].) Plaintiffs also take issue with Defendants' "*processes and procedures* for reviewing and authorizing levels of home nursing care . . . " and "*process* of unreasonable delay in authorization . . . ." (*Id.* ¶¶ 48, 73 [emphasis added].) Additionally, Plaintiffs assert that they "are suffering and will continue to suffer a real and immediate threat of irreparable injury as a result of the *policies and practices* of [D]efendants." (Compl. ¶ 72 [emphasis added].)

Accepting Plaintiffs' well-pleaded facts as true, I find that their complaint alleges both injuries resulting from individual bureaucratic decisions and an apparent change in agency policy that led to these injuries. Until mid-year 2006, recipients all received their benefits without delay. (*Id.* ¶ 38.) Plaintiffs allege that a dramatic shift took place where the previous procedures were supplanted by a practice and policy of wrongfully denying or limiting claims. Whether this shift was the product of a new internal policy or a temporary hiccup is not certain. Nor is it settled whether the agency's "subsequent remedial measures," (*see* Mot. to Dismiss at 7–9), indicate an adjustment to a definitive policy or the finalization of a policy under formulation. Regardless, the

well-pleaded allegations in Plaintiffs' complaint are sufficient at this stage of the litigation to suggest final agency action.

Second, I find that Plaintiffs have sufficiently alleged that Defendants' actions are ones from which rights or obligations have been determined, or from which legal consequences will flow. *See Ctr. for Native Ecosystems v. Cables*, 509 F.3d at 1329. Plaintiffs describe a "deliberate program" instituted by agency officials to cut costs by cutting services to Plaintiffs in violation of an act of Congress and the agency's own regulations. (*See* Compl. at 2; ¶¶ 39–42, 44–49, 69, 72–73.) Contrary to Defendants' interpretation, I do not find that this means that Plaintiffs are impermissibly "embark[ing] on a broad-based, wholesale challenge to an agency's general 'program' of enforcement or administration." (Mot. to Dismiss at 19 [citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-94 (1990)].) Rather, I find, at least when accepting Plaintiffs' well-pleaded facts as true, that their statements challenge a definitive, yet unwritten, policy of the agency. *Cf. Ctr. for Native Ecosystems*, 509 F.3d at 1329 ("If an agency has issued a definitive statement of its position, determining the rights and obligations of the parties, the agency's action is final notwithstanding [t]he possibility of further proceedings in the agency on related issues, so long as judicial review at the time [would not] disrupt the administrative process.'" [quoting *Bell v. New Jersey*, 461 U.S. 773, 779-80 (1983)] [internal quotation marks omitted] [alterations in original]).

In the present case, Plaintiffs assert that Defendants' new approach to handling the authorization of care under the EEOICPA has impacted their legal rights under that statute by threatening the care to which they are entitled. *Cf. Wyoming ex rel. Crank v. United States*, No.

07–8046, 2008 WL 3906587, at *4 (10th Cir. Aug. 26, 2008) (finding agency's interpretation of state and federal statutes had immediate impact on the rights of those who fell under the purview of the statutes).

Therefore, within the scope of a motion to dismiss, where Plaintiffs must prove by a preponderance of the evidence that this court has subject matter jurisdiction and where I accept Plaintiffs' allegations as true, I find Plaintiffs have met their burden. Thus, my January 25, 2008, order denying Defendants' motion to dismiss was proper and there are no reasons justifying relief from it.

### 3. Sanctions

Plaintiffs request sanctions against Defendants' counsel under Title 28 of the United States Code section 1927 for filing the instant motion for reconsideration. (*See* Pls.' Resp. at 2.) Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (2006); *see also Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005) ("Sanctions under [section] 1927 are appropriate when an attorney acts recklessly or with indifference to the law. They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." [citations and internal quotation marks omitted] [alteration in original]).

Because of the unique circumstances surrounding the original disposition of Defendants' motion to dismiss, I find that Defense counsel's filing of the motion for reconsideration does not rise to the level of behavior prohibited by section 1927 and, as such, sanctions are not warranted. However, I note that I am aware of the precarious situation of Plaintiffs, who often by the mere fact that they qualify under the EEOICPA are necessarily ill and elderly. Therefore, going forward, the court is mindful of how vexatious frivolous attempts at stalling this litigation will be.

**4.  *Conclusions***

Based on the foregoing it is therefore ORDERED that:

1.      Defendants' motion for reconsideration (# 68) is DENIED; and

2.      Plaintiffs' request for sanctions is DENIED.

Dated this 26th day of September, 2008.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge